1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

AVIATION TECHNICAL SERVICES,
INC.,

CASE NO. 2:21-cv-01275-RSL-GJL

11

Plaintiff,

REPORT AND RECOMMENDATION

12

v.

Noting Date: July 7, 2023

13

AIRFRAME RECOVERY
MODIFICATION INTL., LLC,

14

Defendant.

15

16        The District Court has referred this action to United States Magistrate Judge Grady J.

17   Leupold pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1,

18   MJR3 and MJR4. Dkt. 28. Currently before the Court is a Motion for Summary Judgment filed

19   by Defendant Airframe Recovery Modification International, LLC ("ARMI"). Dkt. 29.

20        After reviewing the pleadings and relevant evidence, the Court concludes that genuine

21   disputes as to various material facts remain, including whether the Plaintiff's breach caused the

22   claimed damages by failing to supervise Defendant's technicians. Based upon these outstanding

23   material fact disputes, Defendant is not entitled to judgment as a matter of law on its

24

counterclaims. The Court accordingly recommends Defendant's Motion for Summary Judgment (Dkt. 29) be denied.

## I.    PROCEDURAL HISTORY

Plaintiff Aviation Technical Services, Inc. ("ATS") filed a Complaint in this Court on September 20, 2021, alleging claims of breach of contract, breach of express and implied warranties, and negligence. Dkt. 1. Defendant filed its Answer on October 13, 2021, adding two counterclaims for breach of contract by Plaintiff. Dkt. 11. Plaintiff then filed its own Answer to these counterclaims on November 3, 2021. Dkt. 13.

On April 27, 2023, Defendant moved for summary judgment, requesting that the Court dismiss Plaintiff's claims with prejudice and find Plaintiff liable under the counterclaims. Dkt. 29. Plaintiff filed its Response on May 22, 2023. Dkt. 34. Defendant filed its Reply on May 26, 2023. Dkt. 39.

## II.    BACKGROUND

According to the Complaint, Plaintiff provides maintenance and repair services to military, commercial and regional aircraft operators. Dkt. 1 at ¶ 1. On August 5, 2014, Plaintiff and Defendant entered into a Service Agreement ("Agreement") whereby Defendant, acting as a subcontractor, would recruit, interview, hire, and supply aircraft maintenance personnel to Plaintiff. *Id*. at ¶ 6-7. The Defendant agreed to indemnify Plaintiff for damages the Defendant's personnel caused by their "negligence or willful or intentional misconduct."  Dkt. 30-1 at ¶ 6-7.

On June 1, 2017, Plaintiff entered into a separate contract with American Airlines, Inc. ("American") to perform work on American aircraft. *Id*. at ¶ 14. On August 18, 2018, Plaintiff and American entered into an Amendment to this contract to install overhead bins and perform related interior work on sixteen Boeing 737-800 aircraft (the "Oasis Project"). *Id*. at ¶¶ 13-14.

1    On October 1, 2018, Plaintiff and Defendant subsequently executed Addendum #34 to

2    the Agreement, which contained additional provisions that would specifically govern the work of

3    the Defendant's supplied personnel to complete the modifications the Plaintiff agreed to

4    complete for the Oasis Project. *Id.* at ¶ 8.[1] Addendum #34 specified the scope of work to be

5    performed and required Defendant's supplied personnel to perform it in accordance with

6    Plaintiff's "work scope/task cards" and "maintenance manuals and maintenance program." *Id.* at

7    ¶ 9. Plaintiff and/or American provided Defendant's technicians with Engineering Change Order

8    ("ECO") or "OEM" instructions to follow while performing the installation. *Id.* at ¶ 18.

9    However, the Agreement expressly gave the Plaintiff unilateral responsibility to "direct and

10   supervise Supplied Personnel in performing Services" and "sole discretion" to determine

11   whether personnel's work "fail[ed] to meet the standards required by" Plaintiff. Dkt. 30-1, at ¶¶

12   1, 3. The Agreement further prohibits parties from assigning rights or obligations under the

13   contract without obtaining express written consent from the other party. Dkt. 30-1 at ¶ 26.1.

14   The first Oasis aircraft arrived at Plaintiff's facility on August 8, 2018. Dkt. 35 at ¶ 11.

15   Defendant's technicians were trained by observing Plaintiff's technicians perform the

16   modification, then were assigned their first aircraft on September 6, 2018. *Id.* Defendant's

17   personnel performed the modifications on a total of fourteen American aircraft. *Id.* at ¶ 18.

18   Aircraft maintenance logs indicate that Plaintiff accepted and certified the aircraft as airworthy.

19   Dkt. 30 at ¶ 11; Dkt. 30-11. Plaintiff disputes that it approved of Defendant's work, arguing that

20   these certifications concern repairs and do not encompass the Oasis Project modifications. Dkt.

21   35 at ¶ 33.

---

[1] The parties also agreed to Addendum #33, for additional work on the Oasis Project, and Addendum #25, for work on aircraft owned by parties other than American. Dkt. 11 at 6-8. While not mentioned in the Complaint, Defendant's counterclaims allege that Plaintiff has withheld payment owed under these two addenda as well as under Addendum #34. *Id.*; Dkt. 29 at 8.

1    On March 27, 2019, American notified Plaintiff of multiple defects in the interior

2 modifications, including: misalignment of the overhead bins, loose/missing/incorrect hardware,

3 improperly routed cables, and incorrectly drilled holes. *Id.* at ¶ 26. Plaintiff alleges that

4 Defendant caused each of these defects, including that it "installed stow bin support rods and lift

5 rafts upside down . . . mis-rigged stow bin support rods, resulting in incorrectly aligned stow

6 bins, binding of bin door operation and uneven gaps between the bins," and "mis-rigged or

7 incorrectly adjusted passenger service units and ceiling panels." *Id*. at ¶¶ 24-25.

8    On June 27, 2019, American submitted a notice of breach to Plaintiff for these defects.

9 *Id.* at ¶ 27. On July 9, 2019, Plaintiff demanded that Defendant indemnify Plaintiff for damages

10 arising from Defendant's work under Section 10.1 of Agreement. *Id.* at ¶ 28. Section 10.1 of the

11 Agreement contains the following indemnification provision, requiring Defendant to indemnify

12 Plaintiff for injuries "to the extent caused by the negligence or willful or intentional misconduct"

13 of Defendant or its personnel. Dkt. 30-1 at 4-5. Section 10.1 also notes that failure by

14 Defendant's personnel "to follow and comply with the steps set forth in the applicable

15 maintenance manuals shall constitute negligent, willful or intentional misconduct within the

16 meaning of this indemnity." *Id.* at 5.

17    Plaintiff further cites Article 13.2 of the Agreement, which requires Defendant's

18 personnel to "perform Services in a professional workmanlike manner," and "comply with all

19 rules, policies, and regulations prescribed by Customer for its own personnel" as well as "all

20 applicable state and federal laws, regulations, rules and ordinances, including without limitation,

21 all regulations promulgated by the Federal Aviation Administration (FAA)." Dkt. 1 at ¶ 17; Dkt.

22 30-1 at 6-7.

23

24

1    On February 23, 2021, Plaintiff agreed to a $3,600,000 settlement with American for its

2    claims arising from the faulty installation. Dkt. 1 at ¶ 29. Plaintiff claims that Defendant failed to

3    follow and comply with the applicable maintenance manuals and is thus liable under the

4    indemnity provision. *Id.* at ¶¶ 30-39. Plaintiff also alleges that Defendant is liable under theories

5    of express and implied warranties and negligence. *Id.* at ¶¶ 40-50.

6        In its Motion for Summary Judgment, Defendant argues that Plaintiff was solely

7    responsible for supervising the work performed by Defendant under the Agreement, and that

8    Plaintiff's negligence claim should also be dismissed because Defendant owed no independent

9    duty to Plaintiff outside of the Agreement. Dkt. 29 at ¶¶ 12-18. Defendant further requests that

10   the Court grant Summary Judgment on its counterclaims, which are based on Plaintiff's refusal

11   to pay the remaining balance on invoices for work performed by Defendant under Addenda #33

12   and #34 (related to the Oasis Project) and #25 (unrelated to the Oasis Project). *Id.* at ¶¶ 18-22,

13   Dkt. 11 at ¶¶ 6-8.

14                    **III.    DISCUSSION**

15       The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

16   over the material facts before the court and the moving party is entitled to judgment as a matter

17   of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds*

18   *by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). Summary judgment is proper

19   only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that

20   there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a

21   matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law

22   when the nonmoving party fails to make a sufficient showing on an essential element of a claim

23   in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477

24

U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e).

Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 254 (1986) ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). However, when presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (internal citation omitted).

The opposing party cannot rest solely on its pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, n.11; *Anderson*, 477 U.S. at 249-50. In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). However, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

A.    **Plaintiff's Motion to Strike**

1    Plaintiff initially requests that this Court strike certain portions of the Declaration of

2    Morgan Gillette (the "Gillette Declaration"), Dkt. 30, which was submitted in support of

3    Defendant's Motion for Summary Judgment. Dkt. 34 at 19. Specifically, Plaintiff seeks to strike

4    13 lines from the Gillette Declaration because of a lack of personal knowledge, and 8 other lines

5    which "contain legal argument and speculation." *Id.*

6    Only admissible evidence may be considered in ruling on a motion for summary

7    judgment. *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed. R.

8    Civ. P. 56(e). A party may object to cited documentation asserting the material cited would not

9    be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Admissible declarations or affidavits must be

10   based on personal knowledge, must set forth facts that would be admissible in evidence, and

11   must show the declarant or affiant is competent to testify on the matters stated. Fed. R. Civ. P.

12   56(c)(4).

13   To the extent that statements in the Gillette Declaration do not meet the requirements of

14   Rule 56, the statements will not be considered by the Court.

15   **B.    Plaintiff's Breach of Contract Claim**

16   In its Motion for Summary Judgment, Defendant does not contest the quality of the work

17   its technicians performed on the aircraft or whether this work complied with the applicable

18   maintenance manuals. Dkt. 29 at 11-15. Rather, Defendant argues that Plaintiff had a non-

19   delegable duty to supervise work performed by Defendant, and that Plaintiff certified documents

20   attesting that the work performed was airworthy. *Id.* In fact, Defendant argues that "the only

21   question for the Court to resolve is who was responsible for the quality of the work performed by

22   ARMI personnel." *Id.* at 11. According to Defendant, "ARMI cannot be held liable for the

23

24

1    alleged deficiencies in the work when ATS breached its obligation to inspect and sign off on the

2    work ARMI's staff performed under ATS's direction and control." *Id*. This Court disagrees.

3         Defendant is correct that Section 5.1 of the Agreement creates an obligation for Plaintiff

4    to supervise the work of Defendant's technicians, and that Section 26.1 prohibits Plaintiff from

5    assigning that duty without Defendant's express written consent. Dkt. 29 at 4; Dkt. 30-1 at 3, 10.

6    And while Plaintiff argues that it assigned this duty to Defendant's own employee, Mr. Ronald

7    Grigsby, Plaintiff does not address that the Agreement prohibits such an assignment. Dkt. 34 at

8    14-16.

9         However, Defendant cites no authority, and the Court is not aware of any, which holds

10   that contractual indemnity does not apply when the indemnitee has breached a different

11   provision in the contract. Washington courts will not indemnify a party for harm resulting from

12   its own negligence "unless that intention is expressed in clear and unequivocal terms." *BNSF Ry.*

13   *Co. v. Alcoa, Inc.*, 23 Wash. App. 2d 1033 (2022), *review denied*, 200 Wash. 2d 1029, 523 P.3d

14   1189 (2023) (internal citations omitted). The indemnification provision here has no such

15   protection. Dkt. 30-1 at 4-5. But Defendant cannot establish, as a matter of law, that any breach

16   by Plaintiff constitutes negligence, nor that any such negligence caused the defects at issue here.

17   These are genuine issues of material fact that preclude summary judgment. Defendant appears to

18   acknowledge this itself, as it argues "the finder of fact will have to decide if ATS' failure to

19   supervise (as required in Section 5.1 of the Service Agreement) and its concurrent failures to

20   notify ARMI and provide ARMI with an opportunity to cure, were the causes of its later

21   assertions of ARMI's breach." Dkt. 29 at 20.[2] In its Reply, Defendant states that Plaintiff's

22

23   _____

24   [2] Plaintiff argues that it offered Defendant the opportunity to inspect and repair the defects after some of the aircraft
     were returned to Plaintiff's facility, indicating yet another material fact in dispute. Dkt. 34 at 7-8.

1    "failure to do *its job* of inspecting the work is the root cause of the defects on which American

2    Airlines based its claim," but provides no facts which support this conclusion. Dkt. 39 at 6

3    (emphasis in original).

4            Further, adopting Defendant's reading of the supervisory obligations—that any damages

5    under the Agreement are attributable solely to Plaintiff's failure to supervise, even if Defendant

6    also breached—would necessarily preclude indemnification in *any* case and make Defendant's

7    own obligations meaningless. Depending upon the operative facts, and regardless of Plaintiff's

8    alleged failure to supervise, the performance of Defendant's Personnel may well constitute

9    negligence that caused the damages, which would fall squarely within the indemnity provision.

10   The Defendant asks this Court to construe the contract such that the Plaintiff's failure to

11   supervise would abrogate the Indemnity clause, an interpretation that does not square with this

12   Court's obligation to presume that each term is effective and meaningful. *Cambridge*

13   *Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wash. 2d 475, 487 (2009), *as corrected* (Sept.

14   22, 2009) (internal citation omitted).

15          Defendant also argues that its completion, and Plaintiff's acceptance of the work,

16   effectively waives the Plaintiff's claims and prevents recovery via indemnification, because

17   Plaintiff reviewed the modifications and certified the aircraft as being airworthy. Dkt. 29 at 13.

18   Plaintiff counters that, pursuant to American's maintenance program, Plaintiff did not have the

19   responsibility to inspect the specific tasks performed by Defendant. Dkt. 34 at 17. Plaintiff also

20   argues that the Aircraft Maintenance Log on which Defendant relies for this argument is not

21   relevant to Defendant's modifications, as it relates to repairs done on the aircraft, rather than

22   alterations or modifications performed under Project Oasis. *Id.* at 18. In any event, Defendant

23   again cites no authority indicating that Plaintiff's acceptance of the work serves as a waiver and

24

1  precludes it from recovering under the indemnity provision. Accordingly, Defendant's Motion

2  must be denied as to Plaintiff's breach of contract claim.[3]

3  **C.    Plaintiff's Negligence Claim**

4          Defendant argues that the Court should dismiss Plaintiff's negligence claim under the

5  independent duty doctrine. Dkt. 29 at 16-18. However, the Supreme Court of Washington has

6  applied this doctrine only "to a narrow class of cases, primarily limiting its application to claims

7  arising out of construction on real property and real property sales." *Elcon Const., Inc. v. E.*

8  *Washington Univ.*, 174 Wash. 2d 157, 165 (2012); *see Eastwood v. Horse Harbor Found., Inc.*,

9  170 Wash.2d 380, 416 (2010) (plurality opinion) (directing lower courts not to apply the doctrine

10 to tort remedies "unless and until this court has, based upon considerations of common sense,

11 justice, policy and precedent, decided otherwise.") (Chambers, J., concurring). Defendant's

12 argument fails because this case "does not arise in the real property or construction contexts."

13 *Seattle Pac. Indus., Inc. v. S3 Holding LLC*, No. C18-0224RSL, 2019 WL 1556225, at *3 (W.D.

14 Wash. Apr. 10, 2019), *aff'd*, 831 F. App'x 814 (9th Cir. 2020).

15         Defendant points to *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d

16 442, (2010), in which the Supreme Court of Washington applied the independent duty doctrine

17 outside the real property context but concluded that the doctrine did not bar the plaintiff's tort

18 claims against an engineering contractor who installed a faulty electrical system. Dkt. 29 at 17;

19 Dkt. 39 at 7. Defendant does not address Plaintiff's argument that Defendant's technicians owe

20 an independent duty, like that of design professionals or engineers, to use reasonable care when

21 making modifications to aircraft. Dkt. 34 at 21-22 (citing *Donatelli v. D.R. Strong Consulting*

22

23

24

---

[3] Defendant briefly argues that Plaintiff's claims of breach of express and implied warranties should be dismissed for the same reasons as the contract claim. Dkt. 29 at 15. These arguments similarly fail because Defendant has not demonstrated that Plaintiff's failure to supervise Defendant's technicians, nor Plaintiff's acceptance of the work performed, necessarily precludes recovery.

REPORT AND RECOMMENDATION - 10

1   *Engineers*, Inc., 179 Wash. 2d 84, 92 (2013)). Nor did Defendant address the ways in which,

2   according to Plaintiff, Defendant's breach of this duty created a risk of bodily injury to

3   passengers akin to the electrical fire in *Affiliated FM*. Dkt. 34 at 22 (noting that unsecured

4   overhead bins risk severe injury and unsecured wiring and sleeves collect dust and create a fire

5   hazard) (citing *Affiliated FM Ins. Co.*, 170 Wn.2d at 452-53). Instead, Defendant simply states

6   that it "is not an engineer or a design professional," Dkt. 39 at 7, apparently ignoring that "the

7   interest in safety that is at stake when engineers do their work," is very similar to the safety

8   interests at stake in the work of Defendant's technicians. *Affiliated FM Ins. Co.*, 170 Wn.2d at

9   453.

10          Lastly, Plaintiff argues that Defendant's motion fails because the scope of the parties'

11  contractual duties is in dispute. Dkt. 34 at 21 (citing *Donatelli*, 179 Wash. 2d at 92 (2013) ("The

12  analytical framework provided by the independent duty doctrine is applicable only when the

13  terms of the contract are established by record."). This Court agrees.

14          As discussed above, the parties dispute the scope of Plaintiff's supervisory

15  responsibilities under Section 5.1 of the Agreement, as well as whether any faulty installation

16  would be properly attributable to Plaintiff under the contract. *See* Dkt. 29 at 11 ("The only

17  question for the Court to resolve is who was responsible for the quality of the work performed by

18  ARMI personnel."). Because the independent duty doctrine does not bar Plaintiff's negligence

19  claim, Defendant's Motion must be denied.

20  **D.      Defendant's Counterclaims**

21          Defendant argues that this Court should grant summary judgment on its two

22  counterclaims. Dkt. 29 at 18-22. Specifically, Defendant alleges that Plaintiff owes half of the

23  amount invoiced under Addenda 25, 33, and 34 of the Agreement and has improperly withheld

24

this amount[4] since it learned about the defects and potential claims in 2019. Dkt. 39 at 8. Rather than contest the factual basis of Defendant's counterclaims, Plaintiff argues that it was entitled to withhold and offset the amount it owes Defendant against its indemnification claim. Dkt. 24 at 22-23. The parties thus dispute the legal issue of whether Plaintiff may withhold these payments as "a self help set off," Dkt. 29 at 20; or alternatively, whether Plaintiff must pay the balance of the invoices at this juncture, only to potentially win a greater sum from Defendant later in the case.

        "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Tooth Acres LLC v. Hoodstock Ranch LLC*, No. 1:20-CV-3091-TOR, 2020 WL 6379277, at *3 (E.D. Wash. Aug. 31, 2020) (quoting *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995)). "The historical antecedents of setoff rights are long and venerable and are based on the common sense notion that 'a man should not be compelled to pay one moment what he will be entitled to recover back the next.'" *Tibble v. Edison Int'l*, No. CV 07-5359 SVW AGRX, 2011 WL 3759927, at *5 (C.D. Cal. Aug. 22, 2011), *aff'd*, 520 F. App'x 499 (9th Cir. 2013) (quoting *United States v. Norton*, 717 F.2d 767, 773 (3d Cir.1983)). *See also Cont'l Res., Inc. v. Northland Royalty Corp.*, No. 1:17-CV-00227, 2022 WL 5179845, at *7 (D.N.D. Aug. 15, 2022) ("broadly speaking, [the doctrine of setoff] represents the right which one party has against another to use his claim in full or partial satisfaction of what he owes to the other [. . .] the defendant, to avoid a circuity of action, may interpose his mutual claim by way of defense, and if it exceeds that of the plaintiff, may recover for the difference.") (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)).

---

[4] Totaling $652,967. *See* Dkt. 30 at ¶¶ 7-9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Defendant cites *Warren, Little & Lund, Inc. v. Max J. Kuney Co.*, 115 Wash. 2d 211, 216, (1990), which held that a defendant may plead a contingent unliquidated counterclaim as a setoff.[5] Defendant asks the Court to extrapolate this rule to prohibit Plaintiff from setting off its indemnity claim against Defendant's liquidated counterclaims for the debt under the invoices. Dkt. 29 at 20. This Court rejects Defendant's framing, both of Plaintiff's indemnity claim as unliquidated and of *Kuney* as prohibiting the setoff at issue here.

First, "a settlement made in an underlying lawsuit is generally liquidated with respect to subsequent indemnity claims." *Polygon Nw. Co. v. Am. Nat. Fire Ins. Co.*, 143 Wash. App. 753, 791 (2008) (citing *King County v. Puget Sound Power & Light Co.*, 70 Wash. App. 58, 62 (1993)). Defendant does not dispute this, instead arguing in its Reply that this claim would not have been liquidated when Plaintiff began withholding payments in 2019, roughly three years before Plaintiff's settlement with American. Dkt. 39 at 7-8. But the question is whether Plaintiff's claim is "determinable by computation with reference to a fixed standard [. . .] without reliance on opinion or discretion" and thus currently liquidated, not whether it was liquidated at the time of Plaintiff's alleged breach. *Evanston Ins. Co. v. Westchester Surplus Lines Ins. Co.*, No. C07-923 MJP, 2012 WL 3239815, at *2 (W.D. Wash. Aug. 7, 2012), *aff'd*, 546 F. App'x 720 (9th Cir. 2013). Settlement amounts are liquidated regardless of whether they were initially determinable at the time of the underlying conduct that was the subject of the settlement. *See id.* (insurance settlement amount "was concretely established when American Guarantee completed its payment to the settlement" two years after underlying accident); *King Cnty. v. Puget Sound Power & Light Co.*, 70 Wash. App. 58, 60 (1993) (although a negligence suit against plaintiff

---

[5] Wash. Super. Ct. Civ. R. 13 is the Washington equivalent of Fed. R. Civ. P. 13, the federal rule governing counterclaims.

REPORT AND RECOMMENDATION - 13

may have initially been unliquidated, plaintiff's claims were liquidated "the moment [plaintiff] settled the underlying litigation" and defendant could ascertain the amount plaintiff expended).

Second, even if Plaintiff's indemnity claim were unliquidated, nothing in *Kuney* indicates that setoff would be prohibited. Indeed, Plaintiff argues that *Kuney* supports its position because the court allowed a party to assert an unliquidated counterclaim as setoff. 115 Wash. 2d at 216. Defendant notes that *Kuney* does not address the circumstance here – essentially the reverse of *Kuney* – where Plaintiff asserts its primary claims are set off by Defendant's counterclaims. Dkt. 29 at 20. Defendant fails to explain how this factual difference means that Plaintiff's actions "precisely cross the line the Court of Appeals identified in *Kuney*," *Id.*, and does not distinguish Plaintiff's use of its indemnity claim as setoff from the use of setoff counterclaims by defendants as in *Kuney*. *See, e.g., Tooth Acres LLC*, No. 1:20-CV-3091-TOR, 2020 WL 6379277, at *3 ("Defendants have a right to setoff the amount owed on the promissory notes with any recovery on the counterclaims."). Further, prohibiting setoff in this case would run contrary to the goals of the doctrine as outlined above – those of common sense, simplicity, and judicial economy. Thus, Defendant's Motion for Summary Judgment must be denied.

## IV.    CONCLUSION

The undersigned recommends that Defendant's Motion for Summary Judgment (Dkt. 29) be **DENIED.** Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for

consideration on July 7, 2023, as noted in the caption.

Dated this 23rd day of June, 2023.

Grady J. Leupold
United States Magistrate Judge